# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| THE STATE OF MICHIGAN, | ) | Case No.  1:12-cv-00962-RJJ |
|  | ) |  |
| Plaintiff, | ) | Hon. Robert J. Jonker |
|  | ) |  |
| vs. | ) | ORAL ARGUMENT REQUESTED |
|  | ) |  |
| THE SAULT STE. MARIE TRIBE OF | ) | **DEFENDANTS' BRIEF IN SUPPORT OF** |
| CHIPPEWA INDIANS, et al., | ) | **MOTION TO DISMISS** |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |
|  | ) |  |

Seth P. Waxman (D.C. Bar No. 257337)
Edward C. DuMont (D.C. Bar No. 471443)
Danielle Spinelli (D.C. Bar No. 486017)
Kelly P. Dunbar (D.C. Bar No. 500038)
Nicole Ries Fox (CA Bar No. 268819)*
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone: (202) 663-6000
seth.waxman@wilmerhale.com
edward.dumont@wilmerhale.com
danielle.spinelli@wilmerhale.com
kelly.dunbar@wilmerhale.com
nicole.riesfox@wilmerhale.com
*Admitted only in California*

R. John Wernet, Jr. (P31037)
General Counsel
SAULT STE. MARIE TRIBE OF
    CHIPPEWA INDIANS
523 Ashmun Street
Sault Ste. Marie, MI  49783
Telephone: (906) 635-6050
jwernet@saulttribe.net

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................1

BACKGROUND ...........................................................................................................2

STANDARD OF REVIEW ...........................................................................................6

ARGUMENT ................................................................................................................7

I.    THE TRIBE'S SOVEREIGN IMMUNITY REQUIRES DISMISSAL OF THE COMPLAINT .................7

      A.    IGRA's Narrow Abrogation Of Immunity Does Not Apply ...................................7

      B.    *Ex Parte Young* Does Not Apply Here ...............................................................10

II.   COUNTS 4-6 ARE UNRIPE...................................................................................13

III.  COUNTS 1-3 FAIL TO STATE A CLAIM ...............................................................15

CONCLUSION ...........................................................................................................19

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................7

*Berrington v. Wal-Mart Stores, Inc.*, 2012 WL 3734364 (6th Cir. Aug. 30, 2012) ......................7

*Bigelow v. Michigan Department of Natural Resources*, 970 F.2d 154 (6th Cir. 1992) ................6

*Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011) ...........................................10

*Dealer Computer Services, Inc. v. Dub Herring Ford*, 547 F.3d 558 (6th Cir. 2008) ............13, 15

*Ex parte Ayers*, 123 U.S. 443 (1887) .................................................................................10, 11

*Ex parte Young*, 209 U.S. 123 (1908) .................................................................................. *passim*

*Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982) ...............................10

*Florida v. Seminole Tribe of Florida*, 181 F.3d 1237 (11th Cir. 1999).....................................7, 8

*Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295 (N.D.N.Y. 2003) ....................................13

*Grand Traverse Band of Ottawa & Chippewa Indians v. United States Attorney for
    Western District of Michigan*, 198 F. Supp. 2d 920 (W.D. Mich. 2002)..........................18

*Grand Traverse Band of Ottawa & Chippewa Indians v. United States Attorney for
    Western District of Michigan*, 369 F.3d 960 (6th Cir. 2004)................................................4

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998)....................................................15

*Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998)............7, 10

*Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917 (6th Cir.
    2009) .............................................................................................................................7

*Michigan v. Bay Mills Indian Community*, 695 F.3d 406 (6th Cir. 2012) ............................ *passim*

*Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010)........13, 14

*Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir. 1990)...................7

*National Rifle Association of America v. Magaw*, 132 F.3d 272 (6th Cir. 1997)..........................13

*New Jersey Education Association v. New Jersey*, 2012 WL 715284 (D.N.J. Mar. 5, 2012)..........11

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)........................................12

*Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 576 F. Supp. 2d 838 (W.D. Mich. 2008) ................................................................................................2, 3

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) .....................................11, 12

*Sossamon v. Texas*, 131 S. Ct. 1651 (2011) .................................................................9

*Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida*, 177 F.3d 1212 (11th Cir. 1999) .........................................................................................................11

*Texas v. United States*, 523 U.S. 296 (1998) ...............................................2, 13, 14, 15

*Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008) ..................................................10

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002)..........12

*Virginia Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632 (2011)............................10

*Warren v. United States*, 859 F. Supp. 2d 522 (W.D.N.Y. 2012).................................................12

*Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921 (7th Cir. 2008)....................................18

## STATUTES, LEGISLATIVE MATERIALS, RULES, AND REGULATIONS

25 U.S.C.

§ 465................................................................................................4, 16
§ 476................................................................................................3
§ 2702(1)........................................................................................3
§ 2703(6)........................................................................................3
§ 2703(4)........................................................................................5
§ 2703(4)(B)...................................................................................3
§ 2703(7)(A)...................................................................................3
§ 2703(7)(B)...................................................................................3
§ 2703(8)........................................................................................3
§ 2710(b).....................................................................................3, 14
§ 2710(d).....................................................................................3, 14
§ 2710(d)(1)(A)...............................................................................3
§ 2710(d)(7)(A)(i)...........................................................................12
§ 2710(d)(7)(A)(ii)................................................................ *passim*
§ 2719 ................................................................................... *passim*
§ 2719(b)(1)(B)............................................................................4, 5

Michigan Indian Land Claims Settlement Act, Pub. L. No 105-143, 111 Stat. 2652 (1997) ..... *passim*

Federal Rules of Civil Procedure

R. 12(b)(1)...................................................................................1, 6
R. 12(b)(6)...................................................................................1, 7

25 C.F.R.
    § 151.10 .............................................................................................................. 4, 16, 17
    § 151.10(c) ................................................................................................................... 17
    § 151.11 .............................................................................................................. 4, 16, 17
    § 151.12 ....................................................................................................................... 14
    § 559.2(a) .................................................................................................................... 14

## OTHER AUTHORITIES

Department of the Interior, Bureau of Indian Affairs, *Fee-to-Trust Handbook Version II*
    (2011), *available at* http://www.bia.gov/cs/groups/xraca/documents/text/idc-
    002543.pdf. ................................................................................................................ 4, 16

Defendants the Sault Ste. Marie Tribe of Chippewa Indians, Aaron Payment, Keith Massaway, Denis McKelvie, Jennifer McLeod, Debra Ann Pine, D.J. Malloy, Catherine Hallowell, Darcy Morrow, Denise Chase, Bridget Sorenson, and Joan Anderson respectfully submit this brief in support of Defendants' Motion to Dismiss the State of Michigan's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

In its complaint, the State of Michigan claims that a request by the Sault Ste. Marie Tribe of Chippewa Indians (the Tribe) to the Secretary of the Interior to have certain property taken into trust status would violate Section 9 of a tribal-state gaming Compact and the federal Indian Gaming Regulatory Act (IGRA).  The State also claims that, if the Tribe were to conduct any casino operations on that property, the Tribe would do so in violation of federal and state law. Each of the State's six claims for relief should be dismissed as a matter of law.

To begin with, each of the State's claims is barred by the Tribe's sovereign immunity— as confirmed by the Sixth Circuit's recent decision in *Michigan v. Bay Mills Indian Community*, 695 F.3d 406 (6th Cir. 2012).  IGRA effects a narrow abrogation of sovereign immunity, granting jurisdiction only with respect to a "cause of action … to enjoin … gaming activity located on Indian lands."  25 U.S.C. § 2710(d)(7)(A)(ii).  That provision is inapplicable here. With respect to counts 1-3, the State seeks to enjoin the filing of a trust application, not "gaming activity located on Indian lands."  And IGRA's abrogation of immunity is inapplicable to all of the State's claims because the property at issue has not yet been taken into trust—indeed, the Tribe has yet to file a trust application.  Therefore, the land is not "Indian land[]" and there is no "gaming activity" on such lands to enjoin.

The State may not sidestep the immunity of the Tribe by suing individual tribal officials. Even if the Sixth Circuit were to recognize some analog to the doctrine of *Ex parte Young*, 209

U.S. 123 (1908), in the context of tribal sovereign immunity—which to date it has not—the principle would not apply here. *Ex parte Young* may not be used to compel specific performance of a sovereign's contract, to enforce duties governed by IGRA's remedial scheme, or to remedy violations of state law.

In addition, this Court lacks jurisdiction to decide counts 4-6 because those claims are fatally premature, as the State all but concedes. These claims, which are based on the allegations that gaming activity the Tribe might someday conduct on the property would violate the law, are not ripe for adjudication because no gaming is occurring—or can occur—on the property now, and because any future gaming is far down the road and "contingent on a number of factors." *Texas v. United States*, 523 U.S. 296, 300 (1998). The State, moreover, will not suffer any hardship from deferred resolution of the issues raised in counts 4-6.

Finally, setting aside the dispositive jurisdictional issues, each count in the complaint fails to state a claim on which relief may be granted. In view of the two clear-cut jurisdictional issues with respect to counts 4-6, the Tribe addresses only the merits of counts 1-3 in this brief. These counts, which rest on an alleged violation of Section 9 of the tribal-state gaming Compact, fail to state a claim because Section 9 governs only traditional discretionary trust applications made under Section 20 of IGRA. The acquisition at issue here would be a mandatory one, required by the terms of a special federal statute enacted years after the Compact was signed, and the application would not be made under Section 20 of IGRA.

## BACKGROUND

1.      The Tribe "is the modern day political organization of the Chippewa bands which inhabited the eastern portion of the Upper Peninsula of Michigan since before the coming of Europeans." *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 576 F. Supp. 2d 838, 840 (W.D. Mich. 2008) (internal quotation marks omitted). "The [Tribe] is the modern political

successor to distinct historic bands of Ojibwe peoples, who occupied five disparate geographic locations in the Upper Peninsula of Michigan." *Id.* at 841 (internal quotation marks omitted). The Constitution of the Tribe creates five geographic election units reflective of the historic bands.  The Tribe is governed by a Board of Directors.

In modern times, the United States formally acknowledged the Tribe in 1972, and in 1975 the Tribe established a governmental structure in accordance with the Indian Reorganization Act (IRA), 25 U.S.C. § 476.  *See Sault Ste. Marie Tribe*, 576 F. Supp. 2d at 841; Compl. ¶ 3.  The Tribe exercises governmental authority over various parcels of land that are held in trust for the Tribe by the United States.  *See Sault Ste. Marie Tribe*, 576 F. Supp. 2d at 841.

2.      In 1988, Congress enacted IGRA to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments."  25 U.S.C. § 2702(1).  IGRA recognizes the authority of tribes to conduct gaming on "Indian lands," *id.* § 2710(b), (d), defined in part to include "any lands title to which is … held in trust by the United States for the benefit of any Indian tribe," *id.* § 2703(4)(B).

IGRA distinguishes between various "classes" of gaming.  As the Sixth Circuit has recently explained, before engaging in "Class III," casino-style gaming on particular Indian land, a tribe must enact a tribal gaming ordinance; secure approval of that ordinance from the National Indian Gaming Commission (NIGC); and successfully negotiate a Compact with the State in which the gaming will occur.  *See Bay Mills*, 695 F.3d at 410; *see also, e.g.*, 25 U.S.C. § 2710(d)(1)(A).[1]

---

[1]      Under IGRA, Class I gaming includes social games with prizes of minimum value, 25 U.S.C. § 2703(6), while Class II includes bingo, certain similar activities, and certain card games, *id.* § 2703(7)(A), (B).  Class III includes all other forms of gaming.  *Id.* § 2703(8).

Additional restrictions apply to gaming on lands taken into trust for a tribe after the date of IGRA's enactment.[2] Section 20 of IGRA, 25 U.S.C. § 2719, generally prohibits gaming on lands taken into trust after October 17, 1988, subject to several enumerated exceptions. *See, e.g.*, *Grand Traverse Band of Ottawa & Chippewa Indians v. U.S. Att'y for W.D. of Mich.*, 369 F.3d 960, 966 (6th Cir. 2004). One exception applies to lands "taken into trust as part of … a settlement of a land claim." 25 U.S.C. § 2719(b)(1)(B).

3.     In 1993, the Tribe entered into an IGRA gaming Compact with the State of Michigan. *See* Compl. ¶ 19; *id.* Ex. A. Section 9 of that Compact provides that an application to take land into trust "for gaming purposes" shall not be submitted to the Secretary of the Interior in the absence of an agreement with other Michigan tribes "to share in the revenue of the off-reservation gaming facility that is the subject of the § 20 application." Compl., Ex. A, § 9.

After concluding the Compact, the Tribe also passed a Tribal Gaming Ordinance to govern gaming activities on the Tribe's lands. *See* Compl. ¶ 20; *id.* Ex. B. The ordinance recognizes that "the gaming industry is vitally important to the economy of the Tribe and the general welfare of its members" and that "strict regulation" is necessary "to foster the stability and success of gaming." Compl., Ex. B, § 42.102. Pursuant to the Compact and the ordinance, the Tribe now operates several Class III casinos on tribal lands in Michigan. *See* Compl. ¶ 22.

4.     In 1997—four years after the State and the Tribe entered into the Compact— Congress enacted the Michigan Indian Land Claims Settlement Act (MILCSA), Pub. L. No 105-

---

[2]     The Secretary of the Interior has broad discretionary authority to take land into trust for tribes under the IRA, 25 U.S.C. § 465. *See generally* 25 C.F.R. § 151.10 (on-reservation acquisitions); *id.* § 151.11 (off-reservation acquisitions); Department of the Interior, Bureau of Indian Affairs, *Fee-to-Trust Handbook Version II*, § 1 (2011) ("*DOI Handbook*"), *available at* http://www.bia.gov/cs/groups/xraca/documents/text/idc-002543.pdf. Many other statutes—such as the Michigan land settlement act discussed below—also authorize or require the Secretary to take land into trust for particular tribes under specified circumstances.

143, 111 Stat. 2652 (1997).  That statute provides for the division and future use of funds appropriated by Congress to settle judgments rendered against the United States by the Indian Claims Commission based on claims brought by several Michigan tribes, including the Sault Ste. Marie Tribe.  *See generally Bay Mills*, 695 F.3d at 410 (discussing MILCSA).

As relevant here, Section 108(a) of MILCSA authorized the establishment of a "Self-Sufficiency Fund," administered by the Tribe's Board of Directors, to receive the Tribe's share of the judgment funds.  Section 108(c) authorizes the Board to expend interest earned on the fund for a variety of purposes, including "consolidation or enhancement of tribal lands."  Section 108(f) further provides that any land purchased by the Tribe using interest from the fund "shall be held in trust by the Secretary [of the Interior] for the benefit of the tribe."

Once acquired in trust, land purchased by the Tribe under Section 108(c) becomes part of the Tribe's "Indian lands" for purposes of IGRA.  *See* 25 U.S.C. § 2703(4).  It is a separate legal question whether land so acquired, having been taken into trust after 1988, is nevertheless eligible for IGRA gaming by virtue of the Section 20 exception for land "taken into trust as part of … a settlement of a land claim."  *Id.* § 2719(b)(1)(B).

5.      In 2012, the Tribe entered into a Comprehensive Development Agreement (CDA) with the City of Lansing, Michigan to acquire several parcels of land within the City (the Lansing property).  *See* Compl. ¶ 25; *id.* Ex. D.  At the same time, the Board of Directors approved Tribal Resolution No. 2012-11, which recognizes that MILCSA "create[d] a valuable and unique opportunity for the Tribe to engage in economic development opportunities that will be of substantial benefit to the Tribe and to the tribal community."  Compl., Ex. C at 1.  Under the terms of the CDA, the Tribe agrees to acquire the Lansing property using interest from the MILCSA Self-Sufficiency Fund, to tender title to the land to the Secretary for the trust

- 5 -

acquisition required by MILCSA, and to take other steps necessary to establish its legal right to conduct gaming on the land.  *Id.*; *see* Compl. ¶¶ 25, 28.

At the time the State filed its complaint in this case, the Tribe had not yet acquired any of the Lansing property.  *See* Compl. ¶ 26.  On November 1, 2012, the Tribe completed the purchase of the initial parcel covered by the CDA.

6.     On September 7, 2012, the State filed this suit against the Tribe and the members of the Board of Directors and moved for a preliminary injunction to restrain the Tribe from asking the Secretary of the Interior to take the Lansing property into trust.  Counts 1-3 allege, in effect, that filing such an application in the absence of an inter-tribal revenue-sharing agreement would violate Section 9 of the Compact.  *See* Compl. ¶¶ 35-59.

The complaint also contains three counts that the State candidly acknowledges "may not yet be ripe for adjudication."  Compl. at 12.  Count 4 alleges that, "[e]ven if the Tribe is successful in obtaining trust status for some or all of the Casino property, such property will not come within any of the exceptions listed in" Section 20 of IGRA, 25 U.S.C. § 2719, for gaming on lands acquired after 1988, and "[i]f the Tribe operates Class III gaming on the Casino property it will therefore violate" IGRA.  Compl. ¶¶ 62-63.  Count 5 alleges a potential future violation of the Michigan Gaming Control and Revenue Act, based on gross receipts the Tribe "intend[s] to derive" from a casino to be built on the Lansing property.  *Id.* ¶ 67.  Count 6 alleges that "any operation of a casino … on the Casino property would be proscribed by law" and "would therefore be a public nuisance" under state law.  *Id.* ¶¶ 71-72.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), dismissal is required when a claim is barred by tribal sovereign immunity, *see Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919-920 (6th Cir. 2009), or is not ripe, *see Bigelow v. Michigan Dep't of*

*Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992).  Under Rule 12(b)(6), dismissal is required

when a claim "fails to state a claim upon which relief can be granted."  Although this Court must

"accept as true any well-pleaded factual allegations in the plaintiff's complaint," it "need not

accept any legal conclusions or unwarranted factual inferences."  *Berrington v. Wal-Mart Stores,*

*Inc.*, 2012 WL 3734364, at *2 (6th Cir. Aug. 30, 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).

## ARGUMENT

### I.    THE TRIBE'S SOVEREIGN IMMUNITY REQUIRES DISMISSAL OF THE COMPLAINT

"[A]n Indian tribe is subject to suit only where Congress has authorized the suit or the

tribe has waived its immunity."  *Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.*, 523 U.S.

751, 754 (1998); *see also, e.g.*, *Bay Mills*, 695 F.3d at 413-414; *Memphis Biofuels* 585 F.3d at

921.  There is no question of waiver here, and any alleged abrogation must be evaluated using

"two well-established principles of statutory construction:  that Congress may abrogate a

sovereign's immunity only by using statutory language that makes its intention unmistakably

clear, and that ambiguities in federal laws implicating Indian rights must be resolved in the

Indians' favor."  *Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1242 (11th Cir. 1999); *see*

*Bay Mills*, 695 F.3d at 413-416.  Applying these principles, the State cannot carry its burden of

proving the existence of jurisdiction.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895

F.2d 266, 269 (6th Cir. 1990).  And contrary to the State's arguments, the State may not sidestep

the Tribe's sovereign immunity in this case by suing individual tribal officials under a doctrine

similar to *Ex parte Young*.

### A.    IGRA's Narrow Abrogation Of Immunity Does Not Apply

The State argues that its lawsuit falls within a congressional abrogation of tribal

sovereign immunity found in IGRA, 25 U.S.C. § 2710(d)(7)(A)(ii).  *See* Br. in Support of Mot.

for Prelim. Inj. ("PI Br.") 13. That is incorrect. Section 2710(d)(7)(A)(ii) effects only a "narrow" divestiture of immunity. *Seminole Tribe of Fla.*, 181 F.3d at 1242. It applies only when "all of the following are true: (1) the plaintiff is a State or an Indian tribe; (2) the cause of action seeks to enjoin a class III gaming activity; (3) the gaming activity is located on Indian lands; (4) the gaming activity is conducted in violation of a Tribal-State compact; and (5) the Tribal-State compact is in effect." *Bay Mills*, 695 F.3d at 412.[3] The Sixth's Circuit recent decision in *Bay Mills*—which the State does not acknowledge, although it was the losing party— conclusively establishes that the provision does not affect immunity here.

Counts 1-3 of the complaint rest on an alleged violation of Section 9 of the Compact. In those counts, the State seeks: (1) a declaration that the "submission … of an application to the United States to have the Casino property taken into trust violates the Compact and IGRA" and (2) an injunction barring the Tribe "from submitting such an application until … the Tribe has complied with § 9 of its compact." Compl. at 9-12. By their terms, these counts do not seek "to enjoin a class III gaming activity located on Indian lands." 25 U.S.C. § 2710(d)(7)(A)(ii). That is inevitable, because there is no gaming activity presently occurring on Indian land that the State can ask the Court to enjoin. It is also fatal to the State's case, because the provision it relies on abrogates immunity only for "cause[s] of action [that] seek[] to enjoin a class III gaming activity." *Bay Mills*, 695 F.3d at 412.[4] What the State seeks to prevent is the filing of an

---

[3] The State is therefore incorrect when it asserts (PI Br. 13) that Section 2710(d)(7)(A)(ii) "abrogates a tribe's sovereign immunity for actions that seek injunctive relief for violations of a compact that is in effect." That broad paraphrasing of the provision omits multiple requirements, including that the action seek to enjoin gaming activity that is occurring on Indian lands.

[4] Although the Sixth Circuit analyzed these issues in terms of federal subject-matter jurisdiction, Section 2710(d)(7)(A)(ii) "supplies federal jurisdiction and abrogates tribal immunity at a single stroke." *Bay Mills*, 695 F.3d at 414. The court was clear, moreover, that, "for the same reasons that § 2710(d)(7)(A)(ii) does not supply federal jurisdiction [in the case

application to the Secretary of the Interior to take land into trust.  An abrogation of immunity for one type of claim does not extend to other, different claims.  Any abrogation must extend "unambiguously" to the specific claim and relief at issue.  *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011).

Section 2710(d)(7)(A)(ii) also does not abrogate the Tribe's immunity with respect to counts 4-6.  As to count 4, the complaint alleges a violation of 25 U.S.C. § 2719 (IGRA Section 20).  Compl. ¶¶ 61-63.  That provision prescribes certain limitations on "gaming" on "lands acquired in trust by [the] Secretary."  25 U.S.C. § 2719.  As the Sixth Circuit held in *Bay Mills*, Section 2710(d)(7)(A)(ii) does not apply to a claim under Section 2719 where a complaint makes clear the Secretary of the Interior has not yet taken land into trust.  *See* 695 F.3d at 413.  The State's complaint here acknowledges, as it must, that the Lansing property has not been taken into trust.  *See* Compl. ¶ 31 ("Plaintiff believes that the Tribe will submit an application to have the purchased land taken into trust in the very near future.").  Indeed, counts 1-3 and the State's motion for preliminary relief seek to prevent the Tribe from even *applying* for trust status.  Thus, just as in *Bay Mills*, "the [State's] own pleadings defeat [its] argument in support of" the applicability of Section 2710(d)(7)(A)(ii).  695 F.3d at 413.

Counts 5 and 6 of the complaint allege violations of state law.  *See* Compl. ¶ 69 (alleging violation of Michigan Gaming Control & Revenue Act); *id.* ¶¶ 70-75 (nuisance).  The terms of Section 2710(d)(7)(A)(ii) plainly do not apply to claims alleging violation of these state laws, and the State identifies no other possible abrogation of immunity.

For these reasons, the State's suit against the Tribe is barred by sovereign immunity, and all claims against the Tribe must be dismissed.

---

before it], it does not abrogate Bay Mills's immunity either."  *Id.* at 415.  The court's subject-matter jurisdiction analysis thus applies fully here.

**B.    *Ex Parte Young* Does Not Apply Here**

The State has also named as defendants the individual members of the Tribe's Board of Directors, in their official capacities.  It argues that "[f]ederal law is clear that tribal officials can be sued for prospective declaratory and injunctive relief under … *Ex parte Young*."  PI Br. 14. Whatever the merits of that argument as a general proposition, it cannot support an end-run around the Tribe's immunity here.[5]

*First*, the relief sought in counts 1-3 is in effect specific performance of what the State views as the terms of Section 9 of the Compact—barring the Tribe or its representatives from submitting a trust application "until such time as the Tribe has complied with § 9."  *E.g.*, Compl. at 9.  But the Supreme Court has made clear that "*Ex parte Young* cannot be used to obtain … an order for specific performance of a State's contract."  *Virginia Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011).  This rule recognizes the "important distinction" between contracts among individuals and contracts with a sovereign entity.  *Ex parte Ayers*, 123 U.S. 443, 504-505 (1887).  Even if the State were correct in its interpretation of Section 9 (which it is not),

---

[5]      The Sixth Circuit has noted but not addressed the general issue.  *See Bay Mills*, 695 F.3d at 416.  Several other courts have allowed injunctive suits against tribal officials in some circumstances.  *See, e.g.*, *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011); *Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008).  Those decisions are unsound.  *Ex parte Young* is a doctrine unique to the constitutional immunity of States—indeed, a "cornerstone of the Court's Eleventh Amendment jurisprudence."  *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 685 (1982).  But "the immunity possessed by Indian tribes is not coextensive with that of the States."  *Kiowa Tribe*, 523 U.S. at 756.  "Because tribal immunity is a matter of federal common law, not a constitutional guarantee, its scope is subject to congressional control and modification."  *Crowe & Dunlevy*, 640 F.3d at 1154; *see also Bay Mills*, 695 F.3d at 414.  In view of Congress's plenary authority over Indian affairs and its ability to adjust the contours of tribal immunity as it sees fit, the Supreme Court has declined to undertake that project itself.  *See Kiowa Tribe*, 523 U.S. at 758.  Similarly, the courts should leave it to Congress to decide whether any adjustment to the immunity doctrine is necessary to vindicate the supremacy of federal law—which is the only purpose of *Ex parte Young*.  As noted in the text, however, there is no need for the Court to reach this question, because even if *Ex parte Young*-type suits against tribal officials were available in general, the doctrine would not support jurisdiction here.

- 10 -

compelling the Tribe's directors to perform under that contract—which they could do only on behalf of the Tribe—would interfere directly with "the course of [the Tribe's] public policy and the administration of [the Tribe's] public affairs," and subject the Tribe's decisions and actions to "control[] by the mandate[] of judicial tribunals, without [its] consent."  *Id.* at 505.

That rule is dispositive in this case—as the Eleventh Circuit has held with respect to analogous efforts to enforce a gaming agreement.  In *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida*, 177 F.3d 1212, 1225-1226 (11th Cir. 1999), the court held that "[t]he doctrine of *Ex parte Young* may not be used" to bring "a thinly-disguised attempt … to obtain specific performance of the Tribe's obligations under [a gaming agreement with a corporation]." Citing *Ex parte Young* and *Ex parte Ayers*, the court reasoned that "[i]t is well established that *Ex parte Young* does not permit individual officers of a sovereign to be sued when the relief requested would, in effect, require the sovereign's specific performance of a contract."  *Id.* at 1226; *see also New Jersey Educ. Ass'n v. New Jersey*, 2012 WL 715284, at *6 (D.N.J. Mar. 5, 2012) ("Although Plaintiffs have creatively characterized their claims, in substance they ask this Court to mandate the specific performance of a contract. … [This] cannot serve as a basis for an end-run around a state's sovereign immunity protections.").  The State's effort to enforce Section 9 of the Compact thus does not fall within the bounds of *Ex parte Young*.

*Second*, as to counts 1-4, which allege violations of IGRA, *Ex parte Young* is inapposite for another reason.  *Ex parte Young* may not be used to enforce duties governed by IGRA's own remedial scheme.  In *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996), the Supreme Court explained that, "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte*

- 11 -

*Young*."  The Court further held that, in IGRA Section 2710(d)(7), Congress created such a remedial scheme, making *Ex parte Young* "inapplicable."  *Id.* at 75-76.  Although *Seminole Tribe* involved a suit against a State under Section 2710(d)(7)(A)(i), the Court's analysis was not so limited.  The Court explained broadly that "Congress did not intend" to "authorize federal jurisdiction under *Ex parte Young* over a cause of action with a limited remedial scheme" "in the Indian Gaming Regulatory Act."  *Id.* at 75 n.17.

The reasoning in *Seminole Tribe* applies here.  In Section 2710(d)(7)(A)(ii), Congress narrowly abrogated tribal immunity, limiting relief to injunctions aimed at unlawful "class III gaming" on Indian lands.  This provision specifies the cause of action a State may bring and restricts the relief a court may award.  *Cf. Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002) (finding no "detailed and exclusive remedial scheme" where a statute provides only that "an aggrieved party may bring suit in federal court to establish compliance with" the statute, "places no restriction on the relief a court can award," and "does not even say whom the suit is to be brought against").  By narrowly limiting who may sue, who may be sued, and the permissible relief, Section 2710(d)(7)(A)(ii) subjects the Tribe to "a liability that is significantly more limited than would be the liability imposed upon the [tribal] officer under *Ex parte Young*."  *Seminole Tribe*, 517 U.S. at 75-76.

*Third*, *Ex parte Young* does not apply to counts 5-6, which seek equitable relief based on alleged violations of *state* law.  *Ex parte Young* is a federal doctrine crafted to allow federal courts to vindicate the supremacy of federal law.  It has no application to alleged violations of state law.  *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Warren v. United States*, 859 F. Supp. 2d 522, 543 (W.D.N.Y. 2012) ("[T]o the extent Plaintiff seeks to claim that the [Seneca Nation of Indians'] entry into a tribal-state compact violated New

- 12 -

York State's constitution, the doctrine of *Ex parte Young* applies to violations of federal law only."); *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 310 (N.D.N.Y. 2003) ("[T]he amended complaint only asserts violations of state law and, thus, the *Ex parte Young* exception is inapplicable.").

## II.    COUNTS 4-6 ARE UNRIPE

This Court should also dismiss counts 4-6 as patently unripe. "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008). Ripeness turns on two issues: "(1) is the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is the hardship to the parties of withholding court consideration?" *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533, 544 (6th Cir. 2010) (internal quotation marks omitted).

Counts 4-6 seek a declaration that Class III gaming on the Lansing property, *if* it ever occurred, *would* violate federal or state law, and an injunction prohibiting such gaming. In its complaint (at 12), the State explains that it includes these claims "for the purpose of ensuring they are preserved, while understanding that they may not yet be ripe for adjudication." The State's understanding is correct.

*First*, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (internal quotation marks omitted). Ripeness thus "becomes an issue" where, as here, claims depend entirely on such possible future events. *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). Count 4, for example, alleges that the Tribe "will" violate IGRA "if" it conducts Class III gaming on the Lansing property. Compl. ¶ 63. Count 5 alleges a violation of state law based on gross receipts the Tribe "intend[s] to derive" from a casino. *Id.* ¶ 67. And

count 6 alleges a nuisance that "would" be caused by "any operation of a casino" on the Lansing property, because the operation "would be proscribed by law."  *Id.* ¶¶ 71-72.

These claims are unripe because no gaming is occurring—or can occur—on the Lansing property now, and any future gaming is far down the road and "contingent on a number of factors."  *Texas*, 523 U.S. at 300.  The Lansing property is not even within the scope of IGRA because it is not yet held in trust.  Indeed, as is clear from the preliminary relief sought by the State, the Tribe has not even filed the necessary fee-to-trust application explaining to the Secretary why, in the Tribe's view, he is required to accept trust title.  Because the land is not yet "Indian land" under IGRA, no gaming may occur on the property.  *See* 25 U.S.C. § 2710(b), (d).  An initial administrative decision on the threshold issue of trust status could well be months or even years away.  If the Secretary disagrees with the Tribe's interpretation of MILCSA, the Tribe would need to litigate that issue.  Even if the Secretary agrees to acquire trust title, the State or other opponents could challenge that decision in court.  *See* 25 C.F.R. § 151.12.  All of this contingency is reflected in the CDA's provision of a *five-year* window for securing trust approval.  *See* Compl., Ex. D, ¶ 4.8(b)(i)-(iv).  Moreover, NIGC regulations require 120 days' notice before the opening of any Class II or Class III gaming facility.  *See* 25 C.F.R. § 559.2(a).  Thus, even after the land is taken in trust, the Commission will have an opportunity to assess the details and lawfulness of any specific gaming proposal before operations can commence.  Under these circumstances, the claims the State seeks to raise in counts 4-6 are not remotely ripe for adjudication now.

*Second*, the State will suffer no "hardship" from deferred judicial resolution.  *Miles Christi Religious Order*, 629 F.3d at 544.  If there is no "immediate adverse effect" on a party, a case is "too remote and abstract an inquiry for the proper exercise of the judicial function."

- 14 -

*Texas*, 523 U.S. at 301 (internal quotation marks omitted).  The State's allegations that it would be injured *if* the land is taken into trust, *if* gaming is then allowed on the land, and *if* the Tribe then builds a casino and conducts Class III gaming depend on a cascade of speculation.  The State cannot possibly demonstrate that it will face any hardship if the Court does not address counts 4-6 now.  *See Dealer Computer Servs.*, 547 F.3d at 562-563.  Because any injury the State might ultimately suffer from Class III gaming on the Lansing property is at present wholly "speculative [and] may never occur," counts 4-6 are fatally premature.  *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir. 1998).[6]

### III.    COUNTS 1-3 FAIL TO STATE A CLAIM

Finally, this Court should also dismiss counts 1-3 because they fail to state a claim upon which relief may be granted.  Again, these counts claim that Section 9 of the Compact bars the Tribe from tendering title to the Lansing property to the Secretary of the Interior for acquisition in trust.  *See* Compl. ¶¶ 35-59.  That claim rests on a misreading of Section 9.  Section 9 applies only to discretionary applications that seek to "take land into trust for gaming purposes pursuant to § 20 of IGRA (25 U.S.C. § 2719)."  Compl., Ex. A, § 9.  It does not bar an application for trust status for land acquired under MILCSA—a statute that was enacted long after Section 9 was drafted and that *requires* the Secretary to hold any land that meets its requirements in trust regardless of the uses (gaming or otherwise) to which the land might ultimately be put.  The Tribe's application to have the Lansing property taken into trust would therefore not be an application "for gaming purposes" or a "§ 20 application" under Section 9.  Indeed, it would not require the Secretary to address any Section 20 questions at all.

---

[6]      Should the Court conclude that counts 4-6 are ripe and not barred by tribal immunity, the Tribe can further demonstrate that they should be dismissed as legally unfounded.

1.      The complaint and its accompanying materials make clear that the Tribe would file a trust application for the Lansing property under MILCSA's mandatory trust provision.  *See* Compl., Ex. C at 1 (under the CDA, the Tribe will "seek to have [the] lands placed into mandatory trust pursuant to [MILCSA]").  Section 108(f) of MILCSA requires that "[a]ny lands acquired using amounts from interest … of the Self-Sufficiency Fund *shall* be held in trust by the Secretary for the benefit of the tribe."  (Emphasis added.)  This provision applies only to land that meets certain requirements, but as to such land it *requires* that the Secretary hold the land in trust.  This sort of specially conditioned, mandatory trust acquisition stands in sharp contrast to ordinary acquisitions under Section 5 of the IRA, 25 U.S.C. § 465, which are not subject to particular statutory conditions but rather are addressed to the Secretary's broad discretion.  *See supra* note 2; *DOI Handbook* § 2.0 (defining and distinguishing between discretionary and mandatory trust acquisitions).

In particular, MILCSA requires the Secretary to accept in trust any land the Tribe acquires with Self-Sufficiency Fund interest as part of a "consolidation or enhancement of tribal lands," without regard to what use the Tribe might make of the land.  In contrast, the Secretary's regulations governing discretionary trust acquisitions require extensive consideration of a tribe's proposed use of new land—including, for example, detailed consideration of whether land newly acquired in trust would be eligible for gaming under IGRA Section 20, and special consideration of proposals for so-called "off-reservation" gaming.  *See, e.g.*, 25 C.F.R. §§ 151.10, 151.11.

2.      The Tribe and the State signed their Compact in 1993—four years before the enactment of MILCSA.  Unsurprisingly, therefore, the text of Section 9 makes clear that it is directed at applications for ordinary trust acquisitions for gaming purposes, invoking the Secretary's discretionary authority under the IRA.

Section 9 by its express terms is limited to an "application to take land into trust *for gaming purposes pursuant to § 20 of IGRA* (25 U.S.C. § 2719)," and requires the existence of an inter-tribal agreement for sharing "the revenue of the off-reservation gaming facility that is the subject of the § 20 application."  Compl., Ex. A, § 9 (emphasis added).  These provisions make sense for discretionary trust applications.  Under the Secretary's regulations, a discretionary trust application must specify "[t]he purposes for which the land will be used," and special considerations apply to applications for "off-reservation" acquisitions.  *See* 25 C.F.R. §§ 151.10(c), 151.11.  The Secretary's review of a discretionary acquisition proposed "for gaming purposes" would accordingly include evaluation of whether the land would be eligible for gaming under IGRA Section 20—again dovetailing with the language of Section 9.

In contrast, where some other statutory provision, such as MILCSA Section 108(f), does not give the Secretary any discretion but instead requires trust acquisition of land that meets any specified statutory requirements, the language of Section 9 does not apply.  An application for an acquisition made mandatory by a statute must address any specific statutory conditions—but not, unless the mandating statute specifies otherwise, the intended use of the land, and certainly not gaming-related issues such as potential eligibility under IGRA Section 20.  *See* 25 C.F.R. §§ 151.10, 151.11 (requirements apply only when "the acquisition is not mandated").  MILCSA contains no requirement that the Tribe state the purpose of a mandatory acquisition.  An application for mandatory trust acquisition under MILCSA Section 108(f) therefore is not an application "for gaming purposes" or a "§ 20 application" governed by Section 9 of the Compact.[7]

_____

[7]     Whether gaming could occur on the Lansing property would accordingly not be an issue addressed as part of the mandatory land acquisition process.  The NIGC would have an

That interpretation follows straightforwardly from the text, but also makes sense in context.  The conclusion of the Compact four years before the enactment of MILCSA readily explains *why* Section 9 addresses only discretionary applications for gaming purposes.  And this interpretation of the provision also comports with the terms of the Secretary of the Interior's letter approving the Compact, which specifically notes the Secretary's understanding that Section 9 would not "place[] limits on the Secretary's discretion."  Compl., Ex. A.

Finally, any broader reading of Section 9, under which it could restrict the Tribe's right to tender title to land to the Secretary for a mandatory trust acquisition under MILCSA, would raise serious questions about whether the prior contract provision could be enforced in derogation of the Tribe's statutory rights.  *See Grand Traverse Band of Ottawa & Chippewa Indians v. U.S. Att'y for W.D. of Mich.*, 198 F. Supp. 2d 920, 939 (W.D. Mich. 2002) ("it is doubtful that the compact could be construed to circumvent" a "statutory right" even under IGRA Section 20, to which the Compact specifically refers); *cf. Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 932 (7th Cir. 2008) (noting that state-tribe revenue sharing provisions are "arguably barred by the IGRA itself").  There is no reason to confront those questions, because the Compact is readily harmonized with MILCSA simply by recognizing the limited intended scope of Section 9.  On that proper understanding of the Compact's terms, there is no basis for the claims advanced by the State in counts 1-3.

---

opportunity to consider the legality of any specific gaming proposal after the land is taken into trust.  *See supra* p. 14.

## CONCLUSION

The Court should dismiss all counts of the complaint.

Dated:  November 12, 2012                    Respectfully submitted,


                                             */s/ Kelly P. Dunbar*

                                             Seth P. Waxman (D.C. Bar No. 257337)
                                             Edward C. DuMont (D.C. Bar No. 471443)
                                             Danielle Spinelli (D.C. Bar No. 486017)
                                             Kelly P. Dunbar (D.C. Bar No. 500038)
                                             Nicole Ries Fox (CA Bar No. 268819)*
                                             WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                             1875 Pennsylvania Avenue, NW
                                             Washington, DC  20006
                                             seth.waxman@wilmerhale.com
                                             edward.dumont@wilmerhale.com
                                             danielle.spinelli@wilmerhale.com
                                             kelly.dunbar@wilmerhale.com
                                             nicole.riesfox@wilmerhale.com
                                             * *Admitted only in California*

                                             R. John Wernet, Jr. (P31037)
                                             General Counsel
                                             SAULT STE. MARIE TRIBE OF
                                                 CHIPPEWA INDIANS
                                             523 Ashmun Street
                                             Sault Ste. Marie, MI  49783
                                             Telephone: (906) 635-6050
                                             jwernet@saulttribe.net